**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 16, 2010

Lyle W. Cayce
Clerk

No. 09-10974

KASHA WILLIAMS,

Plaintiff – Appellant

v.

MERCK & COMPANY, INC; GRACE PELKOWSKI,

Defendants – Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 07-CV-08134-K

Before HIGGINBOTHAM, DAVIS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Kasha Williams filed this discrimination suit against her former employer, Merck.  The district judge granted summary judgment for Merck, and she now appeals.  Williams worked as a pharmaceutical representative in Longview, Texas, which meant spending significant time driving across a large, mostly rural area to and from hospitals, doctors' offices, and pharmacies.  Much of Williams's job involved presenting product information to doctors and providing them with drug samples.  Merck representatives generally work in loosely-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

formed teams of two; although each representative independently conducts sales calls, the two representatives coordinate their efforts and Merck holds the pair jointly accountable for sales and market-share targets. Merck paired Williams with Lance Noll, a white male.

Williams resigned after missing sales objectives for several years, abandoning an effort to improve sales performance because it was "overwhelming," receiving three reprimands for providing doctors with excessive amounts of drug samples, misidentifying doctors and drug lot numbers in her sampling reports, failing to report accidents she had while driving her company vehicle, and failing to report three recent traffic tickets in violation of Merck policy. She is a black woman—the only black employee at Merck in the Longview area at the time—and claims that Merck, specifically her supervisor Grace Pelkowski, subjected her to a hostile work environment, refused to promote her, and constructively discharged her, all because of her race. She also alleges that Merck retaliated against her for complaining.

I

On April 30, 2007, Williams filed the first of two charges of discrimination.[1] She specified that the alleged race discrimination began in September 2006 and ended on January 2, 2007, the day she tendered her resignation to Merck. After obtaining a right to sue letter, she filed this action in state court. Merck removed the lawsuit to federal court.

Williams's complaint puts forth three claims, all under the Texas Labor Code—racial harassment, disparate treatment based on race, and retaliation—so it must meet the requirements for diversity jurisdiction. On first glance, it does: the amount-in-controversy exceeds $75,000 excluding interest and costs, and we

---

[1] Williams's administrative forms alleged both race and sex discrimination, but she presents only the former issue in federal court.

2

are persuaded that the parties are in complete diversity—Merck, the defendant, is a New Jersey corporation with a principal place of business in New Jersey and Williams, the plaintiff, is a Texas resident.[2]

While Grace Pelkowski appears in the caption as a defendant and she too resides in Texas, Pelkowski is not a proper party to this action. Williams chose to sue exclusively under the Texas Labor Code, which only provides a cause of action against employers—not supervisors or co-workers like Pelkowski.[3] Because "there is absolutely no possibility that [Williams] will be able to establish a cause of action against [Pelkowski] in state court," Pelkowski cannot be joined, complete diversity remains intact, and we have jurisdiction to consider Williams's case against Merck.[4]

II

Williams complains on appeal that Pelkowski created a racially hostile work environment by asking Williams to prepare a list of strengths and weaknesses as part of a plan to improve sales performance; conducting unscheduled field visits with Williams; sarcastically referring to Williams as a "superstar," saying, for example, "Look Kasha, I know you wanna be the superstar," during a mid-year review; posting Williams's sales position on a job

---

[2] *See* 28 U.S.C. § 1332.

[3] *See* TEX. LAB. CODE ANN. § 21.051 (1996) (prohibiting discrimination by an "employer," as part of the Texas Commission on Human Rights Act [TCHRA]); *Marabella v. Autonation U.S.A. Corp.*, 88 F. Supp. 2d 750, 752 (S.D. Tex. 2000) ("Texas state and federal courts have uniformly held that supervisory personnel are not liable in their individual capacity under the TCHRA."); *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 439 (Tex. App.—Waco 2000, pet. denied) ("[S]upervisors and managers are not liable in their individual capacities for alleged acts of discrimination under the TCHRA."); *City of Austin v. Gifford*, 824 S.W.2d 735, 742 (Tex. App.—Austin 1992, no writ) ("The [TCHRA] does not create a cause of action against supervisors or individual employees.").

[4] *See Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983); *see also Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995) (quoting *Green*, 707 F.2d at 205).

recruiting website while Williams was on two-week disability leave; repeating language to Williams that Williams had used in her complaint to human resources and to Pelkowski's superiors; and interrupting Williams as she spoke to physicians during one of Pelkowski's surprise field visits.[5]    Although Williams's claims arise under Texas law, the Texas Labor Code is "intended to correlate state law with federal law in employment discrimination cases" and courts look to federal law to interpret the statute's provisions.[6]

Harassment is only actionable "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[7]    To prove that the complained of conduct is racially discriminatory, a black plaintiff may put forth evidence of race-specific and derogatory terms that makes it clear that the harasser is "motivated by general hostility to the presence" of black people in the workforce.[8]    Or, a plaintiff may demonstrate discriminatory motives through comparative evidence

---

[5] Williams's additional allegations—that Pelkowski attempted to discipline Williams while she was on temporary disability leave, initiated an audit of her driving record, threatened to fire her, and "stripped [her] of her mentorship role"—are made without citations to, or support in, the record.  We do not consider them.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

[6] *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008).

[7] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).  To establish a successful claim of racial harassment, Williams must first prove (1) that she belongs to a protected group, (2) that she was subject to unwelcome harassment, (3) that the harassment was based on her race, and (4) that the harassment affected a term, condition, or privilege of her employment. *Celestine v. Petróleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

[8] *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (Title VII sex discrimination). Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002).

about how the alleged harasser treated members of all races.[9]  "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive [racial] connotations, but actually constituted discrimination because of [race]."[10]

Noticeably absent from Williams's claim of *racial* harassment is any plausible allegation—predicated on either race-specific and derogatory terms or comparisons to other employees—that her putative harasser's conduct was actually based on race.[11]  Nothing about sarcastic "superstar" comments or the posting of Williams's job on a website, for example, necessarily demonstrates racial animus, particularly in the context of Williams's less-than-stellar performance record.

Williams has maintained that her experience with Pelkowski largely mirrored those of four white employees—Jennifer Knight, Cortney Spurger, Scott Beadle, and Jody Westbrook—a telling observation since "[t]o be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and *subjectively offensive, meaning that the victim perceived it to be so*."[12]

In her deposition testimony, Williams stated that Knight, a former Merck representative "had similar encounters with Grace Pelkowski [and] felt forced to leave the company."  Spurger, according to Williams, "was afraid she was next

---

[9] *See Oncale*, 523 U.S. at 80–81 (internal ellipses and quotation marks omitted); *see also Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924–25 (5th Cir. 1982).

[10] *See Oncale*, 523 U.S. at 81; *see also* TEX. LAB. CODE ANN. § 21.051 (providing that Texas law only prohibits employment practices if committed "*because of race*, color, disability, religion, sex, national origin, or age") (emphasis added).

[11] *Harris*, 510 U.S. at 23.

[12] *Shepard v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (citations omitted) (emphasis added).

on Grace's list of people to get rid of and was very upset [and said] 'Kasha, I think she is after me now.'"

In her EEOC statement, Williams drew parallels to the experiences of Beadle and Westbrook, also former sales representatives. Williams explained: "the words Grace said to me were frighteningly almost exact to what she'd said to [Beadle] prior to his decision to resign and go to work for another company." As for Westbrook: "Jody tried to retain her job by reaching out to Human Resources," but "Pelkowski was willing to go as far as necessary to terminate or force Jody out of Merck," including firing her "on a technicality." "It was not until Grace began attacking me in September 2006," Williams wrote, "that it was crystal clear to me, what Jody Westbrook had suffered through."

Williams apparently complained about Pelkowski three times in late November 2006: first to a Merck ombudsman, Elizabeth Lyle; second to Ann Myers in human resources; and third to Pelkowski's supervisor, Marc Dervishian. At no point did she mention anything about racial discrimination. According to Lyle, Williams believed Pelkowski was "angry because she did not get the 'buy-in' she desired" from Williams regarding the plan for improving sales in the Longview territory,[13] and "chose to refrain from suggesting the use of discriminatory practices by Grace Pelkowski." Williams complained to Myers that she "wasn't being treated right [and] felt like [she] couldn't promote within the company." Williams's conversation with Dervishian went the same way: she "wasn't being treated the same as [her] counterparts [such] as Lance [Noll]" and was "concern[ed] with not being able to be promoted."

When asked at her deposition: "Other than your feelings, though—other than your feelings, why do you think it was because you're a Black female?" Williams said: "I just—again, just differences in the way—the way sometimes corporate America and people in positions of power treat others. Because I—I

---

[13] Williams later said the same thing in her EEOC complaint.

was subject to watch the differences in how, say, Grace Pelkowski treated me versus how she treated a White female or a White male, just observing, in observing.  That's—that's all I can say on that."  We have long cautioned that such "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment."[14]

Given Williams's own perceptions of Pelkowski's motives, Williams's attempts on appeal to analogize her situation to that of her white counterpart, Lance Noll, are not enough to recast any harassment as the product of racial animosity.  Due to their disappointing sales and market-share performance in Merck's Longview territory, both Williams and Noll were rated "below objective" on their performance reviews, both were ineligible for promotion, both were subject to an improvement plan, and both had to list areas for improvement. Williams concedes as much on appeal, explaining that she "was held . . . equally accountable for the lagging sales numbers as her Caucasian counterpart."

In short, Williams cannot survive summary judgment on her hostile work environment claim without narrating a coherent and reasonable basis for concluding that she experienced harassment because of her race.  And, though she also argues constructive discharge—that her "working conditions [were] so intolerable that a reasonable person would have felt compelled to resign"—that claim fails for the same reason.[15]  "Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case" because any such discharge is an "aggravated case" of harassment or hostile

---

[14] *See, e.g.*, *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (internal quotation marks omitted)).

[15] *See Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004).

work environment.[16]  Williams's additional claim of discharge founders absent this prerequisite.

### III

Williams next urges that she did not get two promotions at Merck because of her race.  While Williams may not have been a model employee, if equally bad or worse white men or women employed by Merck as pharmaceutical representatives were not subjected to the same alleged adverse employment actions, and Merck failed to offer a nondiscriminatory explanation for the difference in treatment, or it did but Williams presented evidence that the explanation was a pretext, then her disparate treatment claim should be set for trial.[17]

But Williams was not entitled to the first promotion she apparently sought—an elevation to a Senior Professional Representative position—because below objective sales in the Longview territory rendered both her and Noll ineligible for such a promotion under mandatory Merck policy.  And Merck made its decision on Williams's second potential "promotion"—a lateral move to the vaccine division—some sixteen months before Williams filed her first charge of discrimination and well past Texas law's 180-day statute of limitations.[18]  The

---

[16] *Id.* at 147, 149.

[17] *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

[18] *See* TEX. LAB. CODE ANN. § 21.202(a) (prescribing 180-day limitations period). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' [Williams] can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." *See Morgan*, 536 U.S. at 115 (Title VII).  Williams does not argue otherwise on appeal. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004) (explaining that, by not raising the issue in his initial brief on appeal, plaintiff waived argument that race discrimination claims under Texas law could not be revived through continuing violations doctrine).

district court correctly granted summary judgment to Merck on Williams's disparate treatment claim.


## IV

Williams filed a second discrimination charge on July 24, 2007, this time alleging Pelkowski had retaliated against her for complaining.[19] Assuming for argument's sake that retaliation did occur, it ended—at the very latest—on January 2, 2007, the day Williams resigned from Merck. Williams filed her retaliation charge on July 24, 2007, or, in other words, twenty-three days late under Texas law.[20] As the limitations period is both mandatory and jurisdictional, Williams's retaliation claim is automatically time-barred and Merck is entitled to summary judgment.[21]


## V

Carried with the case are two motions related to Williams's untimely service of her opening appellate brief on Merck's counsel. Merck's lawyers say Williams's counsel delivered a brief to them two days late, though even that particular brief was not the brief for *this* case—it was for another Fifth Circuit appeal. According to Merck's lawyers, they twice prompted Williams's counsel to serve a correct brief but still had not received a copy ten days after the opening brief was due. At that point, they filed a motion to dismiss the case with prejudice and to compel submission of the brief, and requested attorney's fees for having had to do so. Williams's counsel denied that she served the wrong brief and filed her own motion for attorney's fees.

---

[19] Williams also alleged discrimination on the basis of "disability," but does not push that claim on appeal.

[20] *See* TEX. LAB. CODE ANN. § 21.202(a) (prescribing 180-day limitations period).

[21] *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); TEX. LAB. CODE ANN. § 21.202(a).

Regardless of whose account is accurate, we can be sure that, at best, Williams's counsel served her client's opening brief on Merck's lawyers two days late and twice filed insufficient record excerpts to this court, missing one deadline and receiving three extensions of time along the way. And while this is not enough to exact attorney's fees, it warrants a caution.

On a related note, we are unfortunately obliged to remind Williams's counsel that litigants must append record citations to factual assertions in their briefs to this court.[22] Citations on the order of "*See Pelkowski entire Deposition*" and "*See deposition of Williams*" are not what we, as a court bound to apply the law to the facts, are looking for. Page numbers are important and not just because they are convenient. Concise and thoughtful briefing (replete with meaningful citations) best serves client interests, encourages fairness and mutual respect among parties to a lawsuit, and, as a happy byproduct, promotes the judiciary's truthseeking function.

## VI

Without a genuine issue of material fact, Williams's case cannot go to trial.[23] We AFFIRM summary judgment in Merck's favor and DENY both pending motions for attorney's fees.

---

[22] *See* FED. R. APP. P. 28(a)(7) and (a)(9)(A); 5TH CIR. R. 28.2.2 ("Every assertion in briefs regarding matter in the record must be supported by a reference to the page number of the original record, whether in paper or electronic form, where the matter is found.").

[23] *See* FED. R. CIV. P. 56(c); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 433 (5th Cir. 2005).