# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41405
Summary Calendar

United States Court of Appeals
Fif h Circuit

**FILED**

June 19, 2017

Lyle W. Cayce
Clerk

CHRISTOPHER LOCK; KEVIN MEYER,

      Plaintiffs - Appellants

v.

CINDIA TORRES; DARREN FRANCES; CHARLES MCQUEEN; HARRIS
COUNTY, TEXAS,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-2766

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:*

      Christopher Lock and Kevin Meyer sued Cindia Torres, Darren Frances, Charles McQueen, and Harris County, alleging violations of 42 U.S.C. § 1983. The defendants filed motions for summary judgment, which the district court granted. We AFFIRM.

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-41405

## FACTUAL AND PROCEDURAL BACKGROUND

On September 29, 2012, Kevin Meyer, a Harris County Sheriff's Deputy, hosted his wedding reception at a lodge in Houston, Texas. We will call him Deputy Meyer to distinguish him from his father. Several hundred guests attended the reception. Cindia Torres and Darren Frances, both Harris County Constable's Office Precinct 1 Deputies, provided security for the event. Torres wore her uniform; Frances worked in plain clothes but displayed his gun, handcuffs, badge, and police identification.

The reception featured an open bar that served, among other things, draft and canned beer. Some guests also brought wine and hard liquor. Around 8:30 p.m., the bartender decided to stop serving alcohol because he "noticed a significant number of guests who were dressed slopp[ily], slurring their words and stumbling." The bartender then informed Torres, Frances, and the groom's mother about his decision.

Robert Meyer ("Mr. Meyer"), Deputy Meyer's father, became visibly agitated when he learned of the bartender's decision to cease the alcohol service. As a result, he "began loudly complaining" and informed the bartender that his son was a police officer who could handle any problems himself. Frances then intervened to inform Mr. Meyer that "the bartenders were simply doing what they had a right to do." There is no dispute that Mr. Meyer responded with some degree of physical force, though only some witnesses said he "struck or pushed" Frances. Frances gave a strong warning not to touch him again. There is some evidence that Mr. Meyer later stumbled backward and touched Frances a second time. Other possibilities of how a later "touching" occurred is that Mr. Meyer "pushed" Frances, or that he simply placed his hand on Frances's shoulder to better hear what he was saying.

Cindia Torres, who we remind was the uniformed constable, observed the disagreement and began to escort Mr. Meyer from the ballroom. Deputy

No. 16-41405

Meyer, the groom, came to his father's aid, along with thirty to forty other people. Torres claims Deputy Meyer grabbed her "shoulder or shirt collar." Torres asked the deputy to release her, and, when he refused, the plain-clothed constable Frances put Deputy Meyer "in a bear-hug and told him to identify himself." Other witnesses recall the scene differently. Some claim that Deputy Meyer never touched Torres or interfered with his father's arrest. The appellees claim that both Meyers were intoxicated at the time of the incident.

After the initial altercation, Torres and Frances directed both Meyers to the lounge area for questioning. During the conversation, a large crowd formed in the hallway, prompting the bartender to place a table in front of the doorway to prevent additional congregants from crowding the area. Torres and Frances then asked the partygoers "to move away and to leave" the premises immediately or they would be arrested.

Accounts differ as to what happened after this warning. Torres states that several guests, including Christopher Lock, claimed to be police officers and refused to leave the scene. Torres maintains that Lock ignored her threat to arrest him for criminal trespass and continued to disturb the scene by yelling to Deputy Meyer and using profanity toward her. Torres claims she physically escorted Lock to the exit but was unable to make him leave. Lock, on the other hand, claims that Torres used profanity toward him after he tried to identify himself as a police officer. By his account, he never responded to her comments. He claims instead to have "left and went off the property" to stand on the street outside. Other witnesses corroborated Lock's version of events.

At some point, Torres called her supervisors and requested reinforcement. Along with other deputies, Harris County Constable Sergeant Charles McQueen arrived and talked with Lock. Their conversation is the point of some debate. Lock claims that McQueen gave him permission to

reenter the lodge; McQueen denies ever giving such permission. For her part, Torres states that she did not hear McQueen give Lock permission but that he later told her he had done so.

Torres arrested Deputy Meyer "for interfering with public duties when he grabbed and pulled her" as she attempted to detain his father. She arrested Lock for criminal trespass after he "remained on the premises after receiving notice to depart . . . ." When McQueen arrived on the scene, he asked Torres not to file charges in order to avoid "bad blood" between the sheriff's office and the constable's office. By then, Torres had already called an assistant district attorney ("ADA"), who agreed to bring charges. Torres did not inform the ADA that Deputy Meyer and Lock were law enforcement officers, but the ADA claims that information "wouldn't have changed [her] decision" to accept the charges. Although McQueen would have released Deputy Meyer and Lock as a professional courtesy, he maintains that Torres "had total probable cause for her actions at the scene."

Both of the Meyers and Lock were taken to jail and formally charged. A Harris County Criminal Court judge, Pam Derbyshire, found probable cause and set bail. All charges were later dismissed.

Only Deputy Meyer and Lock brought this Section 1983 suit; Mr. Meyer did not sue. They claimed "Torres arrested them without probable cause." They further alleged that McQueen was deliberately indifferent to their rights by failing to properly train and supervise his subordinates. Finally, they claimed Harris County has enacted unconstitutional practices and customs that caused the alleged Section 1983 violations. The district court granted summary judgment to all defendants. Deputy Meyer and Lock timely appealed.

No. 16-41405

DISCUSSION

Our review of summary judgment is *de novo*, in which we apply the same legal standard to the evidence as the district court did. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 2003). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of identifying the basis for its motion and the portions of the record that support it. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). Once that burden is satisfied, the nonmovant must "go beyond the pleadings and by her own affidavits . . . designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Our review of the evidence must be in the light most favorable to the non-moving party, with all reasonable inferences from the evidence made in that party's favor. *Nola Spice*, 783 F.3d at 536.

Section 1983 provides a cause of action against any person who deprives another of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. To make a sufficient claim, plaintiffs "must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). Plaintiffs "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). We address the claims against the individual and municipal defendants separately.

No. 16-41405

I.   *Individual Defendants Torres, Frances, and McQueen*

Both plaintiffs allege that Torres arrested them without probable cause and that Frances failed to protect them from unlawful arrest.  Lock further alleges that McQueen failed to protect him from unlawful arrest and failed to supervise Torres when she arrested him.  The district court held that the individual defendants were entitled to qualified immunity.

Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of showing the defense does not apply.  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  To do so, the plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 536 U.S. 731, 735 (2011).  We have discretion to determine which step to address first.  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

We first address the claims against Torres.  "The right to be free from arrest without probable cause is a clearly established constitutional right."  *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).  To overcome the qualified-immunity defense, the plaintiffs must show Torres did not have probable cause to arrest them.  Probable cause exists when a police officer "had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime."  *Id.*  An officer is entitled to qualified immunity even if she "reasonably but mistakenly conclude[d] that probable cause [was] present."  *Id.* at 1017.

6

No. 16-41405

Relevant here is the independent-intermediary doctrine. *See Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010). "Under that doctrine, if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300–01 (5th Cir. 2011). The rule applies even if the intermediary acted after the arrest. *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016). It does not apply, though, if "it can be shown that the deliberations of [the] intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988).

The district court held that the independent-intermediary doctrine applied to bar the claims against Torres. After the arrests, these two plaintiffs were brought before Judge Pam Derbyshire. She found there to be probable cause for their detention. Though the facts surrounding the arrests are disputed, all that matters is that there is no competent summary-judgment evidence to suggest the police in any way tainted Judge Derbyshire's determination. *See Buehler*, 824 F.3d at 556. Whether probable cause existed is thus moot.

On appeal, the plaintiffs attempt to distinguish *Buehler*, alleging that Torres intentionally misdirected Judge Derbyshire by lying in her presentation of facts. These claims are simply allegations, which, "without more, are insufficient to overcome summary judgment." *Cuadra*, 626 F.3d at 813. Instead, "the plaintiff[s] must affirmatively show that the defendants tainted the intermediary's decision." *See Buehler*, 824 F.3d at 555 (alterations omitted). No such evidence is in the record. Torres is thus entitled to qualified immunity. *See id.*

The independent-intermediary doctrine also bars the claims against Frances and McQueen. On appeal, Deputy Meyer and Lock confine their argument to whether McQueen needed to be present for supervisory liability to attach. He did, as "liability will not attach where an officer is not present at the scene of the constitutional violation." *Whitley*, 726 F.3d at 646. Also important is whether there was acquiescence by a defendant officer in the violation. *Id.* at 647. Here, McQueen was not present at the time of the events giving rise to the arrests. He did not encourage or approve of Torres's conduct prior to his arrival, nor did he communicate such support in some way. Moreover, the district court correctly concluded that the judicial determination of probable cause "broke the causal chain between Torres's actions and any resulting constitutional harm." Likewise, that determination broke any causal chain between the arrests and the alleged failure to intervene or supervise. The district court correctly granted summary judgment in favor of Frances and McQueen also.

## II.    *Municipal Defendant Harris County*

The plaintiffs argue that Harris County is liable because it has four "unconstitutional practices and customs" that combined to cause the alleged constitutional violations. These are inadequate supervision of law-enforcement personnel; failure to train and discipline officers engaged in wrongdoing; retaining officers who should be fired; and improperly maintaining law-enforcement records.

Before a municipality can be liable under Section 1983, it must be shown that it had policies that were the "moving force" that led to constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). The fact that an official policy may have led to police misconduct is not the test. "There must at least be an affirmative link between the training inadequacies alleged, and

the particular constitutional violation at issue." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).  Municipal liability will not attach if the complaining party "has suffered no constitutional injury" at the hands of a municipal employee. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Because the independent-intermediary doctrine operates as a bar to all claims against Torres, Frances, and McQueen, there is no constitutional violation arising from the actions of the individual defendants.  Without a constitutional violation, Harris County is not liable under Section 1983.  *See Shields v. Twiss*, 389 F.3d 142, 151 (5th Cir. 2004).

AFFIRMED.