# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-50937

United States Court of Appeals
Fifth Circuit

**FILED**
March 11, 2019

Lyle W. Cayce
Clerk

KYLE RAY SHAW,

　　　　Plaintiff–Appellee,

v.

DWAYNE VILLANUEVA, in his Individual and Official Capacity as County Sheriff; ROBERT C. EBROM, JR., in his Individual and Official Capacity as Chief Deputy Sheriff,

　　　　Defendants–Appellants.

Appeal from the United States District Court
for the Western District of Texas

Before JONES, BARKSDALE, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

This qualified-immunity appeal arises from a political feud in Karnes County, Texas, ground zero for the Eagle Ford Shale oil boom. Squabbling, both personal and political, among county officials and activists led to Kyle Shaw's arrest. Shaw sued, claiming that County Sheriff Dwayne Villanueva and Chief Deputy Sheriff Robert Ebrom, among others, had conspired to violate his civil rights.

The issue is simply stated: Did the district court err in denying qualified immunity to Villanueva and Ebrom? We answer yes given the bare-bones nature of Shaw's allegations. The Supreme Court is no-nonsense about pleading specificity requirements: "Threadbare recitals of the elements of a

No. 17-50937

cause of action, supported by mere conclusory statements, do not suffice."[1] Shaw complains he is entitled to relief. But Shaw's complaint does not show it.

We REVERSE.

I

This legal dispute began as a political one. Kyle Shaw's wife was elected Karnes County Judge.[2] During her tenure, she voiced strong opinions about controversial governance issues roiling the county. In response, a group of sitting and former public officials and activists formed the Karnes County Patriots. Their "collective mission," Shaw asserts, "was to oust Judge Shaw . . . and secure the election of Sheriff Villanueva." Then, she lost her Democratic primary and resigned.

A few months later, former Sheriff Bobby Mutz accused Kyle Shaw of harassment. In his "Voluntary Statement," Mutz alleged that Shaw harassed him in the pick-up line at Falls City Elementary School. Specifically, Mutz says that Shaw "roll[ed] his window down halfway," "put his fingers in a gun," and shot at him—presumably gesticulating—several times. All while Mutz's granddaughter was in the car.

Based on this, Deputy Sheriff Phillips prepared a probable-cause affidavit for criminal harassment. The affidavit largely mirrored Mutz's statement. A week later, Deputy Phillips submitted the probable-cause affidavit to Justice of the Peace David Sotelo, procuring an arrest warrant for Shaw. Deputy Morin arrested Shaw the next week.

In the two weeks between Mutz's original complaint and Shaw's arrest, no one from the Sheriff's Department interviewed witnesses or followed up

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Often described as the chief executive officer of county government, county judges in Texas wield an array of judicial and administrative powers, such as overseeing budgets and presiding over commissioners courts, the county's policymaking body.

No. 17-50937

with Mutz. After considering the allegations against Shaw, the Karnes County grand jury no-billed the case. The charges were dropped.

Shaw then brought several claims, but this appeal deals only with three: § 1985, false arrest, and conspiracy to violate § 1983. Shaw sued Karnes County and five individual defendants:

- Dwayne Villanueva (Karnes County Sheriff);
- Robert C. Ebrom, Jr. (Karnes County Chief Deputy Sheriff);
- James Troy Phillips (another Karnes County Deputy Sheriff);
- David Morin (same); and
- Bobby Mutz (former Karnes County Sheriff).

Most Defendants moved to dismiss.[3] The magistrate judge partly agreed, believing that Phillips and Morin were entitled to qualified immunity but not Villanueva and Ebrom. The district court agreed, adopting the magistrate judge's factual findings and legal conclusions. Villanueva and Ebrom appealed, asserting that qualified immunity should shield them too.

## II

This appeal reaches us at the motion-to-dismiss stage. To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4] In reviewing, "[w]e accept all well pleaded facts as true and view them in the light most favorable to the plaintiff."[5] But we don't defer to the lower court's legal conclusions. Instead, a plaintiff must plead facts reasonably supporting the legal conclusions.[6]

---

[3] Only Mutz, who no longer held office, did not join that motion.

[4] *Phillips v. City of Dall.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

[5] *Heaney v. U.S. Veterans Admin.*, 756 F.2d 1215, 1217 (5th Cir. 1985).

[6] *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

No. 17-50937

We have interlocutory jurisdiction over qualified-immunity issues that turn solely on questions of law.[7] When a defendant asserts qualified immunity, the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity.[8] The plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[9] And vicarious liability doesn't apply to *Bivens* and § 1983 suits.[10] So each official must have independently violated the nonmovant's rights.[11]

## III

Villanueva and Ebrom argue that since the court granted Phillips and Morin qualified immunity, they should be immune too. They insist that Shaw's allegations are merely conclusory. Plus, they emphasize the magistrate's finding that the arrest warrant wasn't tainted.

In response, Shaw reiterates his allegation that Villanueva and Ebrom had him arrested purely because of their political feud with his wife. What's more, Shaw says that Deputy Phillips added false information to the probable-cause affidavit.

## A

We first consider whether Villanueva and Ebrom are immune since Justice of the Peace Sotelo issued an arrest warrant. Generally, if an independent intermediary, such as a justice of the peace, authorizes an arrest, then the initiating party cannot be liable for false arrest. We recently explained this in *McLin*: "[T]he intermediary's decision breaks the chain of causation for

---

[7] *Iqbal*, 556 U.S. at 671–72.

[8] *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

[9] *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (cleaned up).

[10] *Iqbal*, 556 U.S. at 676.

[11] *See id.*

false arrest . . . ."[12] In fact, the initiating party can even be malicious. That alone still won't overcome the independent-intermediary doctrine. We held that 30-plus years ago in *Hand*.[13] And we reiterated it in 2016 in *Buehler*.[14] We also elaborated in *Buehler* that the doctrine applies even if the arrestee was never convicted.[15]

True, there is an exception to the doctrine. Under *McLin*, if the plaintiff shows that the defendant tainted the intermediary's decision-making process, the defendant can be liable.[16] But the plaintiff has to show that the defendant maliciously withheld relevant information or otherwise misdirected the intermediary.[17] In *McLin*, the plaintiff alleged a series of collective and individual meetings, specific plots to pursue criminal charges, and various flawed arrest-warrant drafts.[18]

Here, the independent-intermediary doctrine applies, but the exception doesn't.

---

[12] *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)).

[13] *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) ("[E]ven an officer who acted with malice in procuring the warrant . . . will not be liable if the facts supporting the warrant . . . are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's independent decision breaks the causal chain and insulates the initiating party." (cleaned up)).

[14] *Buehler v. City of Austin*, 824 F.3d 548, 555 (5th Cir. 2016) (applying the independent-intermediary doctrine where the grand jury found probable cause).

[15] *Id.* at 554 nn.4–5 ("Our precedents have applied [the independent intermediary doctrine] even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime.").

[16] *McLin*, 866 F.3d at 689.

[17] *Id.*; *see also Buehler*, 824 F.3d at 554–55 ("An independent intermediary's probable cause finding does not protect law enforcement officials whose malicious motive leads them to withhold any relevant information, or otherwise misdirect the magistrate or the grand jury by omission or commission." (cleaned up)).

[18] *Id.* at 690–91.

Yes, Mutz's statement was false.[19] Contrary to the statement, Shaw was not even at Falls City Elementary School on the date alleged. Still, that doesn't establish that Villanueva or Ebrom knew Mutz was lying. Nor does it show that their subordinates knew Mutz was lying when they prepared the affidavit. And Shaw fails to allege any other facts that show Villanueva or Ebrom misdirected Justice of the Peace Sotelo. Unlike in *McLin*, Shaw's allegations come up short.

Rather, they strike us as similar to the skeletal allegations in *Iqbal*.[20] There, Iqbal alleged that Ashcroft "knew of, condoned, and willfully and maliciously agreed to" violate Iqbal's constitutional rights.[21] Iqbal also alleged that Ashcroft was the "principal architect" of an invidious policy of violating prisoners' constitutional rights.[22] But the Supreme Court held that, by themselves, these were simply bald allegations.[23]

Consider also our unpublished opinion from this year in *Curtis*.[24] There, the plaintiff's taint allegations failed at the motion-to-dismiss stage, the same stage as here. The plaintiff never "allege[d] that the Appellees deceived the [intermediary] or withheld material information from it."[25] Instead, the allegations were just bare assertions. And so we affirmed the district court's decision to grant qualified immunity.[26]

Shaw's unadorned allegations are similarly conclusory. He has pleaded no specific facts showing that Villanueva and Ebrom misdirected Sotelo into issuing the arrest warrant. And so he has not established the exception to the

---

[19] Again, we are at the motion to dismiss stage where we assume all well-pleaded facts are true.

[20] 556 U.S. 662 (2009).

[21] *Id.* at 680.

[22] *Id.*

[23] *Id.* at 681.

[24] *Curtis v. Sowell*, No. 18–20164, 2019 WL 654170 (5th Cir. Feb. 15, 2019).

[25] *Id.* at *2.

[26] *Id.* at *4.

No. 17-50937

independent-intermediary doctrine. In other words, his allegations are all broth and no beans.

Finally, Shaw contends that Deputy Phillips doctored the complaint affidavit because it contained two unfavorable details absent from Mutz's statement. But that's irrelevant here. The Supreme Court held in *Iqbal* that "vicarious liability is inapplicable to *Bivens* and § 1983 suits."[27] And thus in deciding qualified immunity for Villanueva and Ebrom, we do not concern ourselves with Phillips.[28] Besides, Shaw has not appealed Phillips' qualified immunity.

In sum, the independent-intermediary doctrine applies, meaning Villanueva and Ebrom are entitled to qualified immunity from Shaw's false-arrest claim.

B

We next turn to Shaw's claim that Villanueva and Ebrom violated 42 U.S.C. § 1985 and conspired to violate 42 U.S.C. § 1983.

For a § 1985 claim, Shaw must allege that Villanueva and Ebrom (1) conspired; (2) for the purpose of depriving, either directly or indirectly, Shaw of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) took or caused action in furtherance of the conspiracy; which (4) injured Shaw or deprived him of his rights or privileges as a United States citizen.[29]

Shaw's threadbare assertions fall short of the sort of well-pleaded facts that would allow us to draw the reasonable inference that Appellants are liable for violating § 1985. As discussed above, Shaw has failed to allege facts to

---

[27] *Iqbal*, 556 U.S. at 676.

[28] And in any event, these allegations do not appear in Shaw's complaint. At this stage of litigation, we can only consider what is in the complaint.

[29] 42 U.S.C. § 1985(3); *Carpenters v. Scott*, 463 U.S. 825, 828–29 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971).

satisfy element four, an actual deprivation of his rights. He alleges no specific facts showing that Villanueva and Ebrom *themselves* acted in furtherance of a conspiracy to violate his civil rights—though he has lots to say about what Phillips, Morin, and other subordinates did. In short, Shaw's complaint, read in its entirety, is replete with conclusory allegations but devoid of specific facts (or at least devoid of specific facts that are not inextricably bound up with legal conclusions). Shaw thus cannot establish a § 1985 conspiracy claim.

As for his § 1983 conspiracy claim, we explained in our 1990 case *Pfannstiel*[30] that such claims are unique. The plaintiff must not only allege facts that "establish (1) the existence of a conspiracy involving state action," but also "(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[31] No deprivation, no § 1983 conspiracy. But again, Shaw asserts legal conclusions—that Villanueva and Ebrom deprived him of his civil rights—but no well-pleaded facts supporting those conclusions. Again, naked allegations or legal conclusions masquerading as something more will not thwart dismissal. As pleaded, Shaw's conspiracy-to-violate-§ 1983 allegations, unsupported by sufficient factual content, are insufficient to state a plausible claim for relief.

IV

Post-*Iqbal*, formulaic recitations or bare-bones allegations will not survive a motion to dismiss. Given the thinness of Shaw's allegations, Villanueva and Ebrom are entitled to qualified immunity. We REVERSE.

---

[30] *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992).

[31] *Id.*