# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30734

United States Court of Appeals
Fifth Circuit

**FILED**

April 26, 2017

Lyle W. Cayce
Clerk

AARON JUDE JORDAN,

> Plaintiff - Appellant

v.

OFFICER DEREK BRUMFIELD; NEW ORLEANS CITY,

> Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-1922

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

PER CURIAM:*

Aaron Jordan appeals the dismissal of his 42 U.S.C. § 1983 claim against Officer Derek Brumfield and the City of New Orleans (the "City"). Jordan alleges that Officer Brumfield, in his individual and official capacity, violated Jordan's constitutional rights when he obtained an arrest warrant for Jordan on stalking charges without probable cause. He also asserts municipal liability against the City for failure to supervise and failure to train. The district court

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30734

dismissed Jordan's § 1983 claims under Federal Rule of Civil Procedure 12(b)(6) with prejudice, denying him leave to amend. After consideration of Jordan's claims, we AFFIRM.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

Jordan's first contact with the Sens family occurred in 2009, when Judge Paul Sens, then a New Orleans Municipal Court judge, tried and convicted Jordan for criminal trespass. Nothing further happened until 2012. That year, New Orleans Inspector General Ed Quatreveaux issued a letter critical of Judge Sens' practice of hiring family members for positions at the New Orleans Municipal Court. The letter included a list of Judge Sens' relatives who worked at the municipal court, as well as their income. Included on that list was Judge Sens' niece, Lenee Sens-Crowley, and her husband, Dan Crowley, both of whom worked as minute clerks for the court.

After Jordan heard media reports about the Inspector General's criticism, he took it upon himself to disseminate this news to the Sens' personal and professional associates. Jordan sent four different letters concerning the Sens' family, each to multiple recipients. His first letter, dated July 4, 2013, went to judges on the New Orleans Municipal Court, Traffic Court, and First and Second City Courts, and it mentioned both Judge Sens and his family. Jordan sent the second letter, dated August 26, 2013, to a local realty firm once he discovered Lenee Sens-Crowley and the Judge's wife, Ann Sens, worked there; the letter concerned both women. The third letter, dated May 18, 2014, concerned Ann Sens and was sent to another realty company. The final letter, sent on an unspecified day in May 2014, concerned Ann Sens and was sent to clients of the realty firm where she and Lenee Sens-Crowley worked. The

---

[1] Because this appeal is from a motion to dismiss, the facts are taken from the complaint, accepted as true, and presented in the light most favorable to Jordan. *See Brown v. Miller*, 519 F.3d 231, 234 (5th Cir. 2008).

2

letters were based on the allegations in the Inspector General's letter and related news reports, along with Jordan's opinions. They did not contain any threats or false statements.

In 2014, Jordan founded a citizens' group to patrol the French Quarter composed of concealed-carry permit holders. A local news station interviewed Jordan about the group on May 29, 2014. Lenee Sens-Crowley made a police report after this news story aired, and Officer Brumfield applied for a warrant for Jordan's arrest. Attached to the warrant was the following affidavit:

> ON 5-30-2014 AT ABOUT 5:40PM, MS. CROWLEY STATED THAT A SUBJECT KNOWN TO HER AS AARON JUDE JORDAN, IS INTENTIONALLY AND REPEATEDLY HARASSING HER BY SENDING LETTERS TO EMPLOYERS AND CLIENTS. MS. CROWLEY STATED THAT THE (SUBJECT) ARRON JUDE JORDAN, HAS HARASSED THE STAFF FOR WHOM HAS [sic] WORKED IN THE COURTS DURING THE TIME HE HAD A CASE IN WHICH HE WAS CONVICTED FOR TRESPASSING IN 2009. MS. CROWLEY STATED THAT THE (SUBJECT) HAS ALSO HARASSED THE JUDGE WHO SENTENCES [sic] HIM AND THE JUDGES [sic] WIFE AND FAMILY. MS. CROWLEY FURTHER STATED THAT THIS ON GOING [sic] HARASSMENT BY THE (SUBJECT) AARON JUDE JORDAN HAS MADE HER SUFFER EMOTIONAL DISTRESS, AND AFTER LEARNING THAT THE (SUBJECT) WAS KNOWN TO BE A GUN ADVOCATE HAS HER IN AND [sic] EVEN MORE STATE OF FEAR OF THE (SUBJECT) ACTING OUT AGAINST HER AND HER FAMILY.

Once the warrant issued, Jordan turned himself in to police. The District Attorney's Office ultimately declined to prosecute.

Jordan sued under 42 U.S.C. § 1983, bringing claims against Officer Brumfield in his individual and official capacity and against the City for failure to train. He claimed Officer Brumfield violated his rights under the Fourth, Fourteenth, and Eighth Amendments when he applied for a warrant without probable cause. Jordan also brought numerous state law tort claims. Officer

No. 16-30734

Brumfield asserted qualified immunity, and both he and the City moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). After allowing both sides to file motions in support and in reply to the motion to dismiss, as well as surreplies, the district court dismissed Jordan's § 1983 claims with prejudice based on qualified immunity. After dismissing all federal claims, the district court declined to exercise supplemental jurisdiction over the state law claims. The district court also denied Jordan leave to amend his complaint. Jordan timely appealed.

## II. STANDARD OF REVIEW

This court reviews a Rule 12(b)(6) dismissal de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Hines v. Alldredge*, 783 F.3d 197, 200–01 (5th Cir. 2015) (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Still, a complaint must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's "[f]actual allegations must . . . raise a right to relief above the speculative level." *New Orleans City v. Ambac Assurance Corp.*, 815 F.3d 196, 200 (5th Cir. 2016) (quoting *Twombly*, 550 U.S. at 555). We need not "accept as true a legal conclusion couched as a factual allegation." *Bass v. Stryker Corp.*, 669 F.3d 501, 507 (5th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). When reviewing the dismissal, this court is "not restricted to ruling on the district court's reasoning, and may affirm . . . on a basis not mentioned in the district court's opinion." *Gulf Gaur. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002) (quoting *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999)).

No. 16-30734

Denial of leave to amend a complaint is reviewed for abuse of discretion. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "However, where a district court's denial solely was based on futility, this court applies a de novo standard identical, in practice, to the standard used for reviewing a motion to dismiss for failure to state a claim." *Id.* (citing *Wilson v. Bruks–Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010)).

### III. DISCUSSION[2]

On appeal, Jordan urges that the district court erred by (1) failing to apply the proper Rule 12(b)(6) standard, (2) dismissing his *Malley* claim against Officer Brumfield, (3) dismissing his failure-to-supervise and failure-to-train claims, and (4) denying him leave to amend his complaint.

Jordan first claims that the district court impermissibly required him to anticipate the qualified immunity defense; however, it is well established that a plaintiff must plead facts sufficient to overcome qualified immunity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *see also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 207 (5th Cir. 2009) ("[P]laintiffs must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause . . . ."). When a defendant claims qualified immunity, the district court may, at its discretion, request that the plaintiff reply to a pleading that asserts qualified immunity, and it should ordinarily permit such a reply. *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995) (en banc). The district court permitted Jordan the opportunity to file a reply and a surreply, so we perceive no error in the district court's handling of qualified immunity in this case.

---

[2] We restrict our analysis to Jordan's § 1983 claims because the district court's decision to exercise jurisdiction over his state law claims turned on whether he had stated a valid § 1983 claim.

### 1. Malley *Claim*[3]

First, Jordan asserts that Officer Brumfield violated his constitutional rights when he applied for a warrant without probable cause.  He insists that the warrant was so deficient that "no reasonable officer would have submitted the application," so qualified immunity is inapplicable.  According to Jordan, Officer Brumfield is not entitled to qualified immunity because (1) he plausibly pleaded that Officer Brumfield misled the judge when applying for the warrant, (2) the warrant is bare-bones, (3) Jordan's conduct satisfied none of the elements of simple or felony stalking, and (4) his letters constituted protected free speech.  We disagree.

Qualified immunity is a powerful defense that protects "all but the plainly incompetent or those who knowingly violate the law." *Whitley*, 726 F.3d at 638 (quoting *Malley*, 475 U.S. at 341).  Once invoked, the plaintiff bears the burden of showing that qualified immunity does not apply.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).  A plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  Since the plaintiff must prove both prongs, this court maintains the discretion to decide which prong to address first.  *Id.*

When applying for an arrest warrant, an officer will have "qualified immunity from suit unless, 'on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should

---

[3] All parties and the district court referred to Jordan's action as a false arrest claim, but since Officer Brumfield only applied for a warrant for his arrest, Jordan is actually asserting a *Malley* claim.  *See Malley v. Briggs*, 475 U.S. 335 (1986).  As a practical matter, this does not change our analysis because the district court correctly analyzed whether the warrant issued based on probable cause.

issue.'" *Spencer v. Staton*, 489 F.3d 658, 661 (5th Cir. 2007) *as revised* (July 26, 2007) (quoting *Malley*, 475 U.S. at 341). A warrant issued "by a non-biased magistrate is the 'clearest indication' that officers proceeded 'in an objectively reasonable manner.'" *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012)). Even when a warrant has issued, an officer can be held liable when "a reasonably well-trained officer would have known that the search [or seizure] was illegal despite the magistrate's authorization." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)). Relevant to this appeal, our court has held that an officer is not entitled to rely on a warrant when (1) the affiant intentionally misled the judge by including false information or acting in reckless disregard of the truth, or (2) "the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *United States v. Payne*, 341 F.3d 393, 399–400 (5th Cir. 2003)).

We begin with the first prong of the qualified immunity analysis to determine whether Jordan has sufficiently alleged a violation of a statutory or constitutional right. *See Morgan*, 659 F.3d at 371. We conclude that he has not.

Jordan first claims that the district court impermissibly drew inferences that Officer Brumfield acted in good faith when applying for the warrant and that he did not mislead the judge when applying for a warrant. *See Triplett*, 684 F.3d at 504. In essence, Jordan argues that Officer Brumfield applied for the warrant in retaliation for his founding of the concealed-carry permit group. However, the district court did not draw inferences in favor of Officer Brumfield; rather, the court simply could not draw a reasonable inference against Officer Brumfield based on the facts pleaded. *See Iqbal*, 556 U.S. at 678. The complaint contains no allegations that Officer Brumfield

misrepresented Lenee Sens-Crowley's statements when applying for the warrant or that he should have had any reason to mistrust her statements. An officer may rely on a statement by a witness to supply probable cause. *Cf. Bennett v. City of Grand Prairie*, 883 F.2d 400, 405–06 (5th Cir. 1989) (concluding that probable cause for a warrant can be found based on hearsay, information from informants, or circumstantial evidence if the affiant believes or appropriately accepts the information as true); *Shadley v. Grimes*, 405 F. App'x 813, 815 (5th Cir. 2010) (per curiam) (stating that an officer had probable cause when "nothing in [the witness's] demeanor, appearance, or account caused [the officer] to believe or suspect that [the witness] was wrong or lying"). Indeed, the affidavit includes all information Officer Brumfield had, including Jordan's gun advocacy.[4]   Therefore, we uphold the district court's determination that Officer Brumfield did not mislead the judge in his affidavit.

Next, Jordan claims he pleaded a constitutional violation on the grounds that the warrant application was "bare-bones" and "conclusory,"[5] such that no reasonable officer would have relied on the warrant. *See Triplett*, 684 F.3d at 504. According to Jordan, the word "harass" is a conclusory statement, and the warrant does not define how his sending letters—and other actions—constituted harassing.   An arrest warrant must include "an affidavit specifying . . . the nature, date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any." La. C. Crim. P. art. 202(A)(1); *see also*, Fed. R. Crim. P. 4.

---

[4] The affidavit is properly considered as part of the pleadings because Jordan refers to it in his complaint and it is central to his claim. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

[5] "Bare-bones" affidavits are those that contain "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).

No. 16-30734

Here, the warrant details specific actions Jordan allegedly took sufficient that a judge could "independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). The affidavit states the source of the information relied upon in the warrant, the witness—and alleged victim—Lenee Sens-Crowley. It indicates that Jordan's actions first started in 2009 and were ongoing at the time of the affidavit. It also indicates specific acts Jordan allegedly performed: sending letters to Lenee Sens-Crowley's employers and clients and harassing staff in the court where Jordan was convicted of trespassing. Lenee Sens-Crowley further represented to Officer Brumfield that Jordan's behavior caused her emotional distress. Although this was not a model affidavit, the warrant describes Jordan's conduct with some specificity, such that we cannot say "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley*, 475 U.S. at 341.

Jordan's attempt to draw a parallel between the "classic bare bones affidavit" in *Spencer* and the affidavit in the warrant for his arrest is unconvincing.[6] *See* 489 F.3d at 661 n.2. The warrant in *Spencer* recites the offense and then adds a conclusory statement that the individual performed that offense. *Id.* In contrast, the information provided in Officer Brumfield's

---

[6] The affidavit in that case provided:

> BEFORE ME, the undersigned authority, personally came and appeared, LT. JACK STATON—DETECTIVE of SPSO P.O. BOX 1440, MANY, LA., Zip Code 71449, who, having been by me duly sworn, did depose and say that on the 24TH day of AUGUST, 2003, one BERNICE LOUISE SPENCER committed the offense of ACCESSORY AFTER THE FACT, LA.R.S.14:25 TO FIRST DEGREE MURDER, LA.R.S.14:30 within this state and Parish at PLEASANT HILL, LA. The affiant states that the accused committed the above described offense based on the following information: THIS SUBJECT DID HELP HER HUSBAND, JOHN GLENN SPENCER AND VASCO T. ZINNERMAN, and EVADE LAW ENFORCEMENT OFFICERS AFTER THE TWO HAD COMMITTED ARMED ROBBERY AND FIRST DEGREE MURDER.

*Spencer v. Staton*, 489 F.3d 658, 661 n.2 (5th Cir. 2007) *as revised* (July 26, 2007).

affidavit does not appear to be "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt*, 565 U.S. at 547 (quoting *Leon*, 468 U.S. at 923).

Next, Jordan alleges that his conduct satisfied none of the elements of simple stalking or felony stalking under Louisiana Revised Statutes section 14:40.2. Simple stalking requires conduct that is (1) intentional, (2) repeated, (3) following or harassing, and (4) capable of causing a reasonable person to feel emotional distress. *Id.* § 14:40.2(A). Felony stalking has the additional requirement that the defendant place the victim "in fear of death or bodily injury." *Id.* § 14:04.2(B)(2)(a). The applicable standard is whether Jordan has "allege[d] facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause." *Club Retro*, 568 F.3d at 207. Jordan's ultimate innocence of the crime of stalking does not speak to whether he has asserted a plausible constitutional violation. *See Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2005) (per curiam) ("[E]vidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest."). On its face, the affidavit only accuses Jordan of stalking, not felony stalking, so its heightened requirements do not factor into whether Officer Brumfield had probable cause. Even if the court concluded that Jordan's actions could not have resulted in a conviction for stalking, we hold that any mistake by Officer Brumfield was reasonable.[7] *See Staton*, 489 F.3d at 661.

---

[7] Jordan's strongest claim that Officer Brumfield lacked probable cause is that Louisiana courts have overturned a conviction for stalking when the evidence did not establish any communication with the victim. *See State v. Ryan*, 969 So. 2d 1268, 1274 (La. Ct. App. 2007). But the standard to convict an individual is much higher than the standard for probable cause. It was reasonable for Officer Brumfield to believe that probable cause existed based on the multiple letters Jordan sent to Lenee Sens-Crowley's personal and business associates, especially since the statute states harassment can include sending letters. La. Rev. Stat. ann. § 14:40.2(C)(1).

Finally, Jordan argues that his letters were constitutionally protected free speech that could not form the basis of a stalking charge. Even assuming that the letters are protected free speech, Jordan's claim still fails. The warrant makes clear that Jordan relied on the testimony of Lenee Sens-Crowley, not the letters, to establish probable cause for the warrant. The testimony of a witness can establish probable cause. *See Shadley*, 405 F. App'x at 815. Jordan's complaint never alleges that Officer Brumfield viewed the letters or had personal knowledge about the content of the letters.

We therefore hold that the district court did not err in finding that Officer Brumfield was entitled to qualified immunity.

### 2. Monell *Liability*

Jordan next urges that the district court erred when it dismissed his claims against the City. He avers that he has pleaded sufficient factual allegations to establish a failure-to-train claim. Jordan additionally claims that the district court erred in not taking judicial notice of similar acts of misconduct by the New Orleans Police Department ("NOPD"). We are not persuaded.

A claim against an officer in his official capacity is treated as a claim against the municipality. *Brooks v. George Cty.*, 84 F.3d 157, 165 (5th Cir. 1996). The Supreme Court set forth the standard governing municipal liability under 42 U.S.C. § 1983 in *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). To establish liability against a city for failure to train, the plaintiff must establish: "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010).

Jordan has failed to adequately plead deliberate indifference, which ordinarily requires a pattern of similar conduct. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011). Jordan does not allege similar actions by other officers, and his pleadings fail to give rise to a plausible inference that Officer Brumfield's action could give rise to *Monell* liability based on a single incident. *See City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989) (hypothesizing that a city giving officers firearms and requiring them to arrest fleeing subjects without training could create single incident liability).

Nor did the court err in declining to take judicial notice of similar violations by the NOPD. Jordan relies on the Department of Justice's 2011 report ("DOJ report") of abuses within the NOPD as the primary source from which the court should have taken judicial notice. The DOJ's report does mention that New Orleans Police Officers "too frequently . . . conduct illegal . . . arrests with impunity." However, Jordan does not claim that the report contains similar allegations to the one at issue in his case—that officers are applying for arrest warrants without probable cause. Moreover, we find persuasive the reasoning of a district court that held the report, by itself, cannot establish a pattern of repeated conduct. *Barrios-Barrios v. Clipps,* 825 F. Supp. 2d 730, 750–51 (E.D. La. 2011). The DOJ report states that it does not assert culpability for any unconstitutional acts. *Id.* at 751. Therefore, the district court was under no obligation to take judicial notice of a pattern of unconstitutional acts based on the DOJ report.

The district court primarily relied on the independent intermediary doctrine to demonstrate that Jordan cannot show a causal connection between any alleged failure to train and a violation of his rights. Under this court's independent intermediary doctrine, if the facts supporting a warrant are put before an independent intermediary, then that intermediary's neutral decision breaks any causal chain and insulates the affiant from liability. *See Buehler*

*v. City of Austin*, 824 F.3d 548, 553–54 (5th Cir. 2016) *appeal docketed*, No. 16–729 (Dec. 5, 2016).   Neither in the court below nor on appeal has Jordan attempted to overcome the independent intermediary doctrine.   Thus, the district court did not err in concluding that Jordan had not pleaded sufficient facts to establish causation.

### 3.  *Leave to Amend*

Federal Rule of Civil Procedure Rule 15(a) states that leave to amend should be freely given when justice so requires.  "[T]he language of this rule evinces a bias in favor of granting leave to amend," and "[a] district court must possess a 'substantial reason' to deny a request."  *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).  Futility is one such reason.  *See id.*

"A formal motion [to amend] is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Yet, a party that asserts only a bare request in an opposition to a motion to dismiss without specifying the particular grounds for amendment has not brought a proper request to amend. *Id.*

Jordan has waived any request to amend his complaint against Officer Brumfield in his individual capacity.  In both the court below and on appeal, Jordan only requested that he be granted leave to amend in order to satisfy *Monell* liability by pleading additional facts of illegal arrests.  Although Jordan urged below that he "be granted thirty (30) days leave to amend his complaint" should the court find "further factual allegations are necessary against any defendant," this is the sort of bare statement that does not constitute a proper request to amend.  *See Willard*, 336 F.3d at 387; *United States ex rel. Herbert v. Dizney*, 295 F. App'x 717, 725 n.3 (5th Cir. 2008).  Jordan has not specified any grounds for amendment of his claims against Officer Brumfield.

No. 16-30734

We also conclude that Jordan's request for leave to amend his complaint to establish *Monell* liability would be futile. Neither in the court below nor on appeal has Jordan alleged additional facts that would overcome the independent intermediary exception and thus establish causation. *See Buehler*, 824 F.3d at 548. Any amendment is futile if Jordan cannot establish causation, which is an essential element of a failure-to-train claim. *See Zarnow*, 614 F.3d at 170.

The district court did not abuse its discretion when denying leave to amend. *See Whitley*, 726 F.3d at 638.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

No. 16-30734

JAMES L. DENNIS, Circuit Judge, concurring in part and concurring in the judgment:

I fully concur in the majority opinion's affirmance of the district court's dismissal of Aaron Jordan's *Monell* claim and its denial of his motion for leave to amend his complaint. I cannot concur in the majority's analysis of Jordan's *Malley* claim against Officer Brumfield, because I am convinced that any reasonable officer in Brumfield's position would have recognized that the warrant affidavit at issue in this case was not supported by probable cause. However, because Jordan failed to sufficiently brief his claim, I concur in the judgment.

\*

An officer whose request for a warrant allegedly caused an unconstitutional arrest is not protected by qualified immunity, even where the warrant was issued by a neutral magistrate, if "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Under this rule, the "shield of immunity" otherwise conferred by the warrant will be lost where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)) (internal quotation marks omitted).

In *Messerschmidt*, the Supreme Court considered a claim against police officers who had allegedly exceeded the scope of a search warrant. A woman reported that her partner "had attacked her after becoming 'angry because she had called the Sheriff's Department'" and "mentioned that [the suspect] was 'an active member of the 'Mona Park Crips,'" a local gang; interviews revealed

15

that the suspect had shot at the victim with "a black sawed-off shotgun with a pistol grip." *Id.* at 540.  The investigating officer prepared a warrant for a search of the house of the suspect's foster mother, where the victim thought the suspect might be hiding.  The warrant broadly described the property that would be the object of the search, including "[a]ll handguns, rifles, or shotguns of any caliber, or any firearms capable of firing ammunition" and "[a]rticles of evidence showing street gang membership or affiliation with any Street Gang." *Id.* at 541.  The warrant was supported by an affidavit that "explained why Messerschmidt believed there was sufficient probable cause to support the warrant," including descriptions of the assault, the shotgun, and the suspect's possible gang ties.  *Id.* at 542.  When the search warrant was executed, officers did not find the suspect or his weapon; they did, however, find and seize "[the foster mother's] shotgun, a California Social Services letter addressed to [the suspect], and a box of .45-caliber ammunition." *Id.* at 543.

The foster mother and her family sued, arguing that the warrant was invalid under the Fourth Amendment.  The district court denied the officers qualified immunity, and the Ninth Circuit, sitting en banc, affirmed.  The Supreme Court reversed, explaining: "Whether any of the[] facts, standing alone or taken together, actually establish probable cause is a question we need not decide. . . . The officers' judgment that the scope of the warrant was supported by probable cause may have been mistaken, but it was not 'plainly incompetent.'" *Id.* at 553 (quoting *Malley*, 475 U.S. at 341).

The threshold for establishing that a warrant signed by a magistrate is not supported by probable cause is thus indeed a high one.  To hold that an officer's conclusion that a warrant was supported by probable was "plainly incompetent," *id.*, this court must determine that the affidavit "contain[s] wholly conclusory statements, which lack the facts and circumstances from

which a magistrate [could] independently determine probable cause," *United States v. Moore*, 805 F.3d 590, 594 (5th Cir. 2015) (quoting *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)) (internal quotation marks omitted).  An evaluation of probable cause necessarily involves consideration of the relevant criminal statute.  *See Babb v. Dorman*, 33 F.3d 472, 478 (5th Cir. 1994).  Although "[a]n officer on the beat is not expected to have and apply the knowledge of a constitutional scholar," our caselaw does require "that he act in accordance with what a reasonable officer should or should not know about the law he is enforcing."  *Id.* (quoting *Gassner v. City of Garland, Tex.*, 864 F.2d 394, 397 (5th Cir. 1989)) (internal quotations and citation omitted).

Under Louisiana law, simple stalking is the "[(1)] intentional and [(2)] repeated [(3)] following or harassing of another person [(4)] that would cause a reasonable person to feel alarmed or to suffer emotional distress."  La. Rev. Stat. § 14:40.2(A).  For any reasonable officer to have concluded that Brumfield's affidavit established probable cause to arrest Jordan for stalking, that officer would need to believe that the conduct described therein satisfied each of these elements.  *See Babb*, 33 F.3d at 479.  The majority opinion asserts that, because "the warrant describes Jordan's conduct with some specificity, . . . we cannot say 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'"  Op. at 9 (quoting *Malley*, 475 U.S. at 341).  I agree with the majority opinion that the affidavit contained more than conclusory allegations relating to the first three elements of simple stalking.  But because the affidavit contained no facts that could satisfy the fourth element, I must conclude that it was fatally deficient.

Before the district court and before this court, Brumfield presented his affidavit as an accurate summary of the statement that Lenee Sens-Crowley gave him.  As the majority opinion notes, this statement was the only

information that Brumfield relied upon when drafting the affidavit; he did not himself review the letters that Jordan sent to Sens Crowley's associates. Op. at 11. And yet there is nothing in the affidavit to suggest that the letters, or any other aspect of Jordan's conduct, were capable of "caus[ing] a reasonable person to feel alarmed or to suffer emotional distress," as required by § 14:40.2(A). To be sure, the majority opinion states that "Lenee Sens-Crowley . . . represented to Officer Brumfield that Jordan's behavior caused her emotional distress." Op. at 9. But the complainant's subjective response to the defendant's conduct is insufficient to establish the effect it would have on a reasonable person, which is precisely what the final element of stalking is meant to address.

In a 42 U.S.C. § 1983 action alleging false arrest, "[w]e look to the totality of the circumstances to determine whether probable cause, or . . . arguable probable cause, existed." *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 241 (1983)). Here, the affidavit did not allege any facts that could reasonably support a belief that the totality of Jordan's conduct, including his letters, "would cause a reasonable person to feel alarmed or to suffer emotional distress." *See* La. Rev. Stat. § 14:40.2(A). Because the record before this court reveals no facts known to Brumfield, and certainly no fact included in the affidavit, that could have supported an essential element of the crime of stalking, I submit that the officer's judgment that the warrant was supported by probable cause was not merely "mistaken," *see Messerschmidt*, 565 U.S. at 553; in Brumfield's place, "no officer of reasonable competence would have requested the warrant," *see Malley*, 475 U.S. at 346 n.9. Because the majority opinion does not address the affidavit's deficiency, I cannot join in its analysis of this issue.

I do, however, agree with the majority that the judgment of the district court should be affirmed. This court has reiterated that an issue not raised in a party's opening brief is generally forfeited. *E.g.*, *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 626 (5th Cir. 2017). Here, Jordan's opening brief asserted generally that the warrant lacked "substantial content," consisted primarily of "conclusory allegations of 'harassment' that resulted in 'emotional distress,'" and did not support the reasonable conclusion that "any of the four elements of simple stalking were met." (Alteration omitted). However, it did not home in on the facts alleged in the affidavit and did not demonstrate that no reasonable officer could find from them probable cause that Jordan had committed the crime of stalking. Instead, Jordan's argument focused on his actual conduct: he argued that "the letter[s] he sent contained no statements that could be construed as threats" and that they "did not contain any threatening language or factual misstatements that could have reasonably led to anybody suffering emotional distress."[1] Jordan's actual conduct is not determinative here; in a *Malley* claim, what matters is what the affidavit alleged. *See* 475 U.S. at 345. Because Jordan did not meaningfully argue that the warrant affidavit failed to allege facts to support the final element of the stalking statute until his reply brief, Brumfield was denied the opportunity to respond to such an argument. As a result, this court may not properly consider it. *See JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (claim made in "repeat conclusory assertions" without "any supporting argument" is insufficiently briefed); *Knighten v.*

---

[1] Were Jordan proceeding pro se, we might be able to construe these assertions as sufficient to raise an issue regarding the fourth element. *See Johnson v. Quarterman*, 479 F.3d 358, 359 (5th Cir. 2007) ("Briefs by pro se litigants are afforded liberal construction."). However, because Jordan is represented by counsel on appeal, his brief is not entitled to liberal construction. *See Beasley v. McCotter*, 798 F.2d 116, 118 (5th Cir. 1986).

*C.I.R.*, 702 F.2d 59, 60 (5th Cir. 1983) (generally, "[i]t is impermissible to mention an issue for the first time in a reply brief, because the appellee then has no opportunity to respond"). For these reasons, I concur in the judgment.