PER CURIAM: *
Aaron Jordan appeals the dismissal of his 42 U.S.C. § 1983 claim against Officer Derek Brumfield and the City of New Orleans (the “City”). Jordan alleges that Officer Brumfield, in his individual and official capacity, violated Jordan’s constitutional rights when he obtained an arrest warrant for Jordan on stalking charges without probable cause. He also asserts municipal liability against the City for failure to supervise and failure to train. The district court dismissed Jordan’s § 1983 claims under Federal Rule of Civil Procedure 12(b)(6) with prejudice, denying him leave to amend. After consideration of Jordan’s claims, we AFFIRM.
I. FACTUAL AND PROCEDURAL HISTORY[1]
Jordan’s first, contact with the Sens family occurred in 2009, when Judge Paul Sens, then a New Orleans Municipal Court judge, tried and convicted Jordan for criminal trespass. Nothing further happened until 2012. That year, New Orleans Inspector General Ed Quatreveaux issued a letter critical of Judge Sens’ practice of hiring family members for positions at the New Orleans Municipal Court. The letter included a list of Judge Sens’ relatives who worked at the municipal court, as well as their income. Included on that list was Judge Sens’ niece, Lenee Sens-Crowley, and her husband, Dan Crowley, both of whom worked as minute clerks for the court.
After Jordan heard media reports about the Inspector General’s criticism, he took it upon himself to disseminate this news to the Sens’ personal and professional associates. Jordan sent four different letters concerning the Sens’ family, each to multiple recipients. His first letter, dated July 4, 2013, went to judges on the New Orleans Municipal Court, Traffic Court, and First and Second City Courts, and it mentioned both Judge Sens and his family. Jordan sent the second letter, dated August 26, 2013, to a local realty firm once he discovered Lenee Sens-Crowley and the Judge’s wife, Ann Sens, worked there; the letter concerned both women. The third letter, dated May 18, 2014, concerned Ann Sens and was sent to another realty company. The final letter, sent on an unspecified day in May 2014, concerned Ann Sens and was sent to clients of the realty firm where she and Lenee Sens-Crowley worked. The letters were based on the allegations in the Inspector General’s letter and related news reports, along with Jordan’s opinions. They did not contain any threats or false statements.
In 2014, Jordan founded a citizens’ group to patrol the French Quarter composed of concealed-carry permit holders. A local news station interviewed Jordan about the group on May 29, 2014. Lenee Sens-Crowley made a police report after this news story aired, and Officer Brum-field applied for a warrant for Jordan’s arrest. Attached to the warrant was the following affidavit:
ON 5-30-2014 AT ABOUT 5:40PM, MS. CROWLEY STATED THAT A SUBJECT KNOWN TO HER AS AARON JUDE JORDAN, IS INTENTIONAL *411 LY AND REPEATEDLY HARASSING HER BY SENDING LETTERS TO EMPLOYERS AND CLIENTS. MS. CROWLEY STATED THAT THE (SUBJECT) ARRON JUDE JORDAN, HAS HARASSED THE STAFF FOR WHOM HAS [sic] WORKED IN THE COURTS DURING THE TIME HE HAD A CASE IN WHICH HE WAS CONVICTED FOR TRESPASSING IN 2009. MS. CROWLEY STATED THAT THE (SUBJECT) HAS ALSO HARASSED THE JUDGE WHO SENTENCES [sic] HIM AND THE JUDGES [sic] WIFE AND FAMILY. MS. CROWLEY FURTHER STATED THAT THIS ON GOING [sic] HARASSMENT BY THE (SUBJECT) AARON JUDE JORDAN HAS MADE HER SUFFER EMOTIONAL DISTRESS, AND AFTER LEARNING THAT THE (SUBJECT) WAS KNOWN TO BE A GUN ADVOCATE HAS HER IN AND [sic] EVEN MORE STATE OF FEAR OF THE (SUBJECT) ACTING OUT AGAINST HER AND HER FAMILY.
Once the warrant issued, Jordan turned himself in to police. The District Attorney’s Office ultimately declined to prosecute.
Jordan sued under 42 U.S.C. § 1983, bringing claims against Officer Brumfield in his individual and official capacity and against the City for failure to train. He claimed Officer Brumfield violated his rights under the Fourth, Fourteenth, and Eighth Amendments when he applied for a warrant without probable cause. Jordan also brought numerous state law tort claims. Officer Brumfield asserted qualified immunity, and both he and the City moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). After allowing both sides to file motions in support and in reply to the motion to dismiss, as well as surreplies, the district court dismissed Jordan’s § 1983 claims with prejudice based on qualified immunity. After dismissing all federal claims, the district court declined to exercise supplemental jurisdiction over the state law claims. The district court also denied Jordan leave to amend his complaint. Jordan timely appealed.
II. STANDARD OF REVIEW
This court reviews a Rule 12(b)(6) dismissal de novo, “accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.” Hines v. Alldredge, 783 F.3d 197, 200-01 (5th Cir. 2015) (quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)). Still, a complaint must be “plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A plaintiffs “[f]actual allegations must ... raise a right to relief above the speculative level.” New Orleans City v. Ambac Assurance Corp., 815 F.3d 196, 200 (5th Cir. 2016) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). We need not “accept as true a legal conclusion couched as a factual allegation.” Bass v. Stryker Corp., 669 F.3d 501, 507 (5th Cir. 2012) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). When reviewing the dismissal, this court is “not restricted to ruling on the district court’s reasoning, and may affirm ... on a basis not mentioned in the district court’s opinion.” Gulf Gaur. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 476, 486 (5th Cir. 2002) (quoting In re Comshare, Inc. Sec. Litig., 183 F.3d 542, 548 (6th Cir. 1999)).
*412 Denial of leave to amend a complaint is reviewed for abuse of discretion. Whitley v. Hanna, 726 F.3d 631, 638 (6th Cir. 2013). “However, where a district court’s denial solely was based on futility, this court applies a de novo standard identical, in practice, to the standard used for reviewing a motion to dismiss for failure to state a claim.” Id. (citing Wilson v. Bruks-Klockner, Inc., 602 F.3d 363, 368 (5th Cir. 2010)).
III. DISCUSSION[2]
On appeal, Jordan urges that the district court erred by (1) failing to apply the proper Rule 12(b)(6) standard, (2) dismissing his Malley claim against Officer Brum-field, (3) dismissing his failure-to-supervise and failure-to-train claims, and (4) denying him leave to amend his complaint.
Jordan first claims that the district court impermissibly required him to anticipate the qualified immunity defense; however, it is well established that a plaintiff must plead facts sufficient to overcome qualified immunity. Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012); see also Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 207 (5th Cir. 2009) (“[P]laintiffs must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause....”). When a defendant claims qualified immunity, the district court may, at its discretion, request that the plaintiff reply to a pleading that asserts qualified immunity, and it should ordinarily permit such a reply. Schultea v. Wood, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc). The district court permitted Jordan the opportunity to file a reply and a surreply, so we perceive no error in the district court’s handling of qualified immunity in this case.
1. Malley Claim[3]
First, Jordan asserts that Officer Brum-field violated his constitutional rights when he applied for a warrant without probable cause. He insists that the warrant was so deficient that “no reasonable officer would have submitted the application,” so qualified immunity is inapplicable. According to Jordan, Officer Brumfield is not entitled to qualified immunity because (1) he plausibly pleaded that Officer Brumfield misled the judge when applying for the warrant, (2) the warrant is bare-bones, (3) Jordan’s conduct satisfied none of the elements of simple or felony stalking, and (4) his letters constituted protected free speech. We disagree.
Qualified immunity is a powerful defense that protects “all but the plainly incompetent or those who knowingly violate the law.” Whitley, 726 F.3d at 638 (quoting Malley, 475 U.S. at 341, 106 S.Ct. 1092). Once invoked, the plaintiff bears the burden of showing that qualified immunity does not apply. Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008). A plaintiff must show “(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.” Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S.Ct. 2074, *413 179 L.Ed.2d 1149 (2011)). Since the plaintiff must prove both prongs, this court maintains the discretion to decide which prong to address first. Id.
When applying for an arrest warrant, an officer will have “qualified immunity from suit unless, ‘on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue.’ ” Spencer v. Staton, 489 F.3d 658, 661 (5th Cir. 2007) as revised (July 26, 2007) (quoting Malley, 475 U.S. at 341, 106 S.Ct. 1092). A warrant issued “by a non-biased magistrate is the ‘clearest indication’ that officers proceeded ‘in an objectively reasonable manner.’ ” United States v. Triplett, 684 F.3d 500, 504 (5th Cir. 2012) (quoting Messerschmidt v. Millender, 565 U.S. 535, 547, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012)). Even when a warrant has issued, an officer can be held liable when “a reasonably well-trained officer would have known that the search [or seizure] was illegal despite the magistrate’s authorization.” Id. (quoting United States v. Leon, 468 U.S. 897, 922 n.23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Relevant to this appeal, our court has held that an officer is not entitled to rely on a warrant 'when (1) the affiant intentionally misled the judge by including false information or acting in reckless disregard of the truth, or (2) “the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” Id. (quoting United States v. Payne, 341 F.3d 393, 399-400 (5th Cir. 2003)).
We begin with the first prong of the qualified immunity analysis to determine whether Jordan has sufficiently alleged a violation of a statutory or constitutional right. See Morgan, 659 F.3d at 371. We conclude that he has not.
Jordan first claims that the district court impermissibly drew inferences that Officer Brumfield acted in good faith when applying for the warrant and that he did not mislead the judge when applying for a warrant. See Triplett, 684 F.3d at 504. In essence, Jordan argues that Officer Brum-field applied for the warrant in retaliation for his founding of the concealed-carry permit group. However, the district court did not draw inferences in favor of Officer Brumfield; rather, the court simply could not draw a reasonable inference against Officer Brumfield based on the facts pleaded. See Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. The complaint contains no allegations that Officer Brumfield misrepresented Le-nee Sens-Crowley’s statements when applying for the warrant or that he should have had any reason to mistrust her statements. An officer may rely on a statement by a witness to supply probable cause. Cf. Bennett v. City of Grand Prairie, 883 F.2d 400, 405-06 (5th Cir. 1989) (concluding that probable cause for a warrant can be found based on hearsay, information from informants, or circumstantial evidence if the affiant believes or appropriately accepts the information as true); Shadley v. Grimes, 405 Fed.Appx. 813, 815 (5th Cir. 2010) (per curiam) (stating that an officer had probable cause when “nothing in [the witness’s] demeanor, appearance, or account caused [the officer] to believe or suspect that [the witness] was wrong or lying”). Indeed, the affidavit includes all information Officer Brumfield had, including Jordan’s gun advocacy.[4] Therefore, we uphold the district court’s determination that Officer Brumfield did not mislead the judge in his affidavit.
*414 Next, Jordan claims he pleaded a constitutional violation on the grounds that the warrant application was “bare-bones” and “conclusory,”[5] such that no reasonable officer would have relied on the warrant. See Triplett, 684 F.3d at 504. According to Jordan, the word “harass” is a conclusory statement, and the warrant does not define how his sending letters—and other actions—constituted harassing. An arrest warrant must include “an affidavit specifying ... the nature, date, and place of the offense, and. the name and surname of the offender if known, and of the person injured if there be any.” La. C. Crim. P. art. 202(A)(1); see also, Fed. R. Crim. P. 4.
Here, the warrant details specific actions Jordan allegedly took sufficient that a judge could “independently determine probable cause.” United States v. Satterwhite, 980 F.2d 317, 321 (5th Cir. 1992). The affidavit states the source of the information relied upon in the warrant, the witness—and alleged victim—Lenee Sens-Crowley. It indicates that Jordan’s actions first started in 2009 and were ongoing at the time of the affidavit. It also indicates specific acts Jordan allegedly performed: sending letters to Lenee Sens-Crowley’s employers and clients and harassing staff in the court where Jordan was convicted of trespassing. Lenee Sens-Crowley further represented to Officer Brumfield that Jordan’s behavior caused her emotional distress. Although this was not a model affidavit, the warrant describes Jordan’s conduct with some specificity, such that we cannot say “it is obvious that no reasonably competent officer would have concluded that a warrant should issue.” Malley, 475 U.S. at 341, 106 S.Ct. 1092.
Jordan’s attempt to draw a parallel between the “classic bare bones affidavit” in Spencer and the affidavit in the warrant for his arrest is unconvincing.[6] See 489 F.3d at 661 n.2. The warrant in Spencer recites the offense and then adds a conclu-sory statement that the individual performed that offense. Id. In contrast, the information provided in Officer Brum-field’s affidavit does not appear to be “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” Messerschmidt, 565 U.S. at 547, 132 S.Ct. 1235 (quoting Leon, 468 U.S. at 923, 104 S.Ct. 3405).
Next, Jordan alleges that his conduct satisfied none of the elements of simple stalking or felony stalking under Louisiana Revised Statutes section 14:40.2. Simple stalking requires conduct that is (1) intentional, (2) repeated, (3) following or harassing, and (4) capable of causing a reasonable person to feel emotional distress. Id. § 14:40,2(A). Felony stalking has the additional requirement that the defendant *415 place the victim “in fear of death or bodily injury.” Id. § 14:04.2(B)(2)(a). The applicable standard is whether Jordan has “alleged] facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause.” Club Retro, 568 F.3d at 207. Jordan’s ultimate innocence of the crime of stalking does not speak to whether he has asserted a plausible constitutional violation. See Deville v. Marcantel, 567 F.3d 156, 165 (5th Cir. 2009) (per curiam) (“[E]vidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest.”). On its face, the affidavit only accuses Jordan of stalking, not felony stalking, so its heightened requirements do not factor into whether Officer Brumfield had probable cause. Even if the court concluded that Jordan’s actions could not have resulted in a conviction for stalking, we hold that any mistake by Officer Brumfield was reasonable.[7] See Staton, 489 F.3d at 661.
Finally, Jordan argues that his letters were constitutionally protected free speech that could not form the basis of a stalking charge. Even assuming that the letters are protected free speech, Jordan’s claim still fails. The warrant makes clear that Jordan relied on the testimony of Lenee-.Sens-Crowley, not the letters, to establish probable cause for the warrant. The testimony of a witness can establish probable cause. See Shadley, 405 Fed.Appx. at 815. Jordan’s complaint never alleges that Officer Brumfield viewed the letters or had personal knowledge about the content of the letters.
We therefore hold that the district court did not err in finding that Officer Brum-field was entitled to qualified immunity.
2. Monell Liability
Jordan next urges that the district court erred when it dismissed his claims against the City. He avers that he has pleaded sufficient factual allegations to establish a failure-to-train claim. Jordan additionally claims that the district court erred in not taking judicial notice of similar acts of misconduct by the New Orleans Police Department (“NOPD”). We are not persuaded.
A claim against an officer in his official capacity is treated as a claim against the municipality. Brooks v. George Cty., 84 F.3d 157, 165 (5th Cir. 1996). The Supreme Court set forth the standard governing municipal liability under 42 U.S.C. § 1983 in Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish liability against a city for failure to train, the plaintiff must establish: “(1) that the municipality’s training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question.” Zarnow v. City of Wichita Falls, 614 F.3d 161, 170 (5th Cir. 2010).
Jordan has failed to adequately plead' deliberate indifference, which ordinarily requires a pattern of similar conduct. See *416 Connick v. Thompson, 563 U.S. 51, 62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). Jordan does not allege similar actions by other officers, and his pleadings fail to give rise to a plausible inference that Officer Brum-field’s action could give rise to Monell liability based on a single incident. See City of Canton v. Harris, 489 U.S. 378, 390 n.10, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (hypothesizing that a city giving officers firearms and requiring them to arrest fleeing subjects without training could create single incident liability).
Nor did the court err in declining to take judicial notice of similar violations by the NOPD. Jordan relies on the Department of Justice’s 2011 report (“DOJ report”) of abuses within the NOPD as the primary source from which the court should have taken judicial notice. The DOJ’s report does mention that New Orleans Police Officers “too frequently ... conduct illegal ... arrests with impunity.” However, Jordan does not claim that the report contains similar allegations to the one at issue in his case—that officers are applying for arrest warrants without probable cause. Moreover, we find persuasive the reasoning of a district court that h¿ld the report, by itself, cannot establish a pattern of repeated conduct. Barrios-Barrios v. Clipps, 825 F.Supp.2d 730, 750-51 (E.D. La. 2011). The DOJ report states that it does not assert culpability for any unconstitutional acts. Id. at 751. Therefore, the district court was under no obligation to take judicial notice of a pattern of unconstitutional acts based on the DOJ report.
The district court primarily relied on the independent intermediary doctrine to demonstrate that Jordan cannot show a causal connection between any alleged failure to train and a violation of his rights. Under this court’s independent intermediary doctrine, if the facts supporting a warrant are put before an independent intermediary, then that intermediary’s neutral decision breaks any causal chain and insulates the affiant from liability. See Buehler v. City of Austin, 824 F.3d 548, 553-54 (5th Cir. 2016) appeal docketed, No. 16-729 (Dec. 5, 2016). Neither in the court below nor on appeal has Jordan attempted to overcome the independent intermediary doctrine. Thus, the district court did not err in concluding that Jordan had not pleaded sufficient facts to establish causation.

3. Leave to Amend

Federal Rule of Civil Procedure Rule 15(a) states that leave to amend should be freely given when justice so requires. “[T]he language of this rule evinces a bias in favor of granting leave to amend,” and “[a] district court must possess a ‘substantial reason’ to deny a request.” Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004). Futility is one such reason. See id.
“A formal motion [to amend] is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought.” United States ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 387 (5th Cir. 2003). Yet, a party that asserts only a bare request in an opposition to a motion to dismiss without specifying the particular grounds for amendment has not brought a proper request to amend. Id.
Jordan has waived any request to amend his complaint against Officer Brumfield in his individual capacity. In both the court below and on appeal, Jordan only requested that he be granted leave to amend in order to satisfy Monell liability by pleading additional facts of illegal arrests. Although Jordan urged below that he “be granted thirty (30) days leave to amend his complaint” should the court find “further factual allegations are necessary against *417 any defendant,” this is the sort of bare statement that does not constitute a proper request to amend. See Willard, 336 F.3d at 387; United States ex rel. Hebert v. Dizney, 295 Fed.Appx. 717, 725 n.3 (5th Cir. 2008). Jordan has not specified any grounds for amendment of his claims against Officer Brumfield.
We also conclude that Jordan’s request for leave to amend his complaint to establish Monell liability would be futile. Neither in the court below nor on appeal has Jordan alleged additional facts that would overcome the independent intermediary exception and thus establish causation. See Buehler, 824 F.3d at 548. Any amendment is futile if Jordan cannot establish causation, which is an essential element of a failure-to-train claim. See Zarnow, 614 F.3d at 170.
The district court did not abuse its discretion when denying leave to amend. See Whitley, 726 F.3d at 638.
IY. CONCLUSION
For the foregoing reasons, we AFFIRM the judgment of the district court.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cm. R. 47.5.4.

. Because this appeal is from a motion to dismiss, the facts are taken from the complaint, accepted as true, and presented in the light most favorable to Jordan. See Brown v. Miller, 519 F.3d 231, 234 (5th Cir. 2008).

. We restrict our analysis to Jordan’s § 1983 claims because the district court’s decision to exercise jurisdiction over his state law claims turned on whether he had stated a valid § 1983 claim.

. All parties and the district court referred to Jordan's action as a false arrest claim, but since Officer Brumfield only applied for a warrant for his arrest, Jordan is actually asserting a Malley claim. See Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). As a practical matter, this does not change our analysis because the district court correctly analyzed whether the warrant issued based on probable cause.

. The affidavit is properly considered as part of the pleadings because Jordan refers to it in his complaint and it is central to his claim. See Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004).

. "Bare-bones” affidavits are those that contain "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause.” United States v. Satterwhite, 980 F.2d 317, 321 (5th Cir. 1992).

. The affidavit in that case provided:
BEFORE ME, the undersigned authority, personally came and appeared, LT. JACK STATON—DETECTIVE of SPSO P.O. BOX 1440, MANY, LA., Zip Code 71449, who, having been by me duly sworn, did depose and say that on the 24TH day of AUGUST, 2003, one BERNICE LOUISE SPENCER committed the offense of ACCESSORY AFTER THE FACT, LA.R.S. 14:25 TO FIRST DEGREE MURDER, LA.R.S, 14:30 within this state and Parish at PLEASANT HILL, LA. The affiant states that the accused committed the above described offense based on the following information: THIS SUBJECT DID HELP HER HUSBAND, JOHN GLENN SPENCER AND VASCO T. ZIN-NERMAN, and EVADE LAW ENFORCEMENT OFFICERS AFTER THE TWO HAD COMMITTED ARMED ROBBERY AND FIRST DEGREE MURDER.
Spencer v. Staton, 489 F.3d 658, 661 n.2 (5th Cir. 2007) as revised (July 26, 2007).

. Jordan’s strongest claim that Officer Brum-field lacked probable cause is that Louisiana courts have overturned a conviction for stalking when the evidence did not establish any communication with the victim. See State v. Ryan, 969 So.2d 1268, 1274 (La. Ct. App. 2007). But the standard to convict an individual is much higher than the standard for probable cause. It was reasonable for Officer Brumfield to believe that probable cause existed based on the multiple letters Jordan sent to Lenee Sens-Crowley’s personal and business associates, especially since the statute states harassment can include sending letters. La. Rev. Stat. ann. § 14:40.2(C)(1).