# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20797

United States Court of Appeals
Fifth Circuit

**FILED**

December 10, 2018

Lyle W. Cayce
Clerk

STEVEN R. CHARLOT,

      Plaintiff - Appellant

v.

CITY OF HOUSTON; OFFICER L. D. SMITH; SERGEANT FORD; SERGEANT SEALES; M. J. GLOVER; F. A. MEDINA; E. MARTINEZ; CHARLES A. MCCLELLAND,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-3028

Before HIGGINBOTHAM, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:*

Police officers sought and received a warrant authorizing them to perform an anal cavity search on Steven Charlot. Charlot sued for violations of his Fourth Amendment rights. We affirm the district court's grant of summary judgment for the defendants.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20797

**I**

Members of the Houston Police Department surveilled Charlot as he appeared to engage in multiple drug transactions, and then stopped him for traffic infractions. After Charlot consented to the search of his vehicle, officers found a pill bottle containing carisoprodol in someone else's name. They arrested him for possession of a controlled substance. Officers patted Charlot down at the scene of the arrest and found no illegal narcotics on his person.

Based on information that Charlot may have been concealing crack cocaine on his person, police conducted another search incident to arrest at the Houston Police Department's central jail facility. Officer Leonard Smith patted Charlot down and said that he felt something protruding about one inch from between Charlot's buttocks. A jail employee confirmed that he also felt something between Charlot's buttocks. Smith asked his superior officer, Sergeant Curtis Ford, for permission to perform a strip search, but Ford said, after conversation with his supervising lieutenant, that "the only way to determine if Charlot had anything concealed was if he consensually removed the object or if [the officers] could convince him to remove it." Charlot insisted that there was nothing there, and refused either to allow officers to remove any object or to remove it himself. On Ford's instructions, Smith and another officer, Officer Michael Glover, transported Charlot to a hospital that would perform a cavity search upon receiving a warrant.[1]

During the same period, Officer Frank Medina filled out an affidavit describing the basis for the warrant application. In relevant part, it explained:

---

[1] In Smith's written report, he noted that he had told the sergeant that he was only requesting a strip search and not a cavity search, but the sergeant ordered a cavity search. It also appears that the officers had to take Charlot to multiple hospitals before finding a hospital that would perform the cavity search.

No. 17-20797

> Officers Smith and Glover transported the suspect to central jail after he was charged with possession of a controlled substance for the soma. During a search incident to arrest Officer Smith stated that he felt something was protruding from in between Mr. Charlot's buttocks. Officer Smith advised the jail staff, which then searched the suspect upon entering the facility and observed [sic] the jailor to state that he also felt something protruding from between Mr. Charlot's buttocks. Mr. Charlot denied that anything was in between his cheeks; Officer Medina knows this to be consistent with a [sic] narcotics suspect in an attempt to hide contraband. As a result of the circumstances and the behavior of Mr. Charlot officers have reason to believe that Mr. Charlot is hiding contraband inside his person in an attempt to conceal from law enforcement. Mr. Charlot was asked to give officers consent to remove the contraband from his person and Mr. Charlot denied officers permission and stated he would not either.

The county magistrate signed a warrant authorizing the search of Charlot's anal cavity for crack cocaine or pills.

Smith told the doctor that the officers were concerned that Charlot "had concealed illegal narcotics in his buttocks area and possibly now had secreted [them] inside his anus." He explained the need "to determine if [there were] any concealed narcotics for Charlot's safety and to further the investigation." When the doctor was presented with the warrant, she performed a rectal examination; Smith remained in the room during the performance of the search. The doctor found nothing inside Charlot's rectum.[2]

Charlot pleaded guilty to possessing a controlled substance. He then filed suit under 42 U.S.C. § 1983 against the City of Houston; former Police Chief

---

[2] In his incident report, Smith suggested that Charlot was able to discard any contraband while he was in the jail waiting to be searched.

No. 17-20797

Charles McClelland, Jr.; Sergeant Ford; Sergeant Traci Seals; Officers Medina, Smith, Glover, and Eduardo Martinez; and two unnamed officers. His complaint alleged that the individual sergeants and officers violated his rights under the Fourth and Fourteenth Amendments, and that former Chief McClelland and the City were liable for a failure to "instruct, supervise, control, and discipline" the officers.

On motion, the district court dismissed all claims against Sergeants Ford and Seals and Officers Medina and Martinez. It concluded that Charlot failed to state a claim against the four movants because he did not challenge "the validity of the search warrant or . . . the veracity of the supporting affirmations." About five months later, Charlot filed an amended complaint without the court's leave. The amended complaint reasserted claims against the dismissed parties and elaborated on alleged infirmities in the affidavit Medina presented to obtain the warrant. The district court struck the amended complaint because it failed to comply with timing requirements in the Federal Rules.

Before the district court struck the amended complaint, all defendants—including the ones who had already been dismissed—moved for summary judgment. The district court granted the motion for summary judgment as to all remaining defendants. Charlot appealed from the district court's order granting the remaining defendants' motion for summary judgment, though not from the order dismissing Medina, Martinez, and the two sergeants.

## II

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory

4

or constitutional rights of which a reasonable person would have known."[3] The Court has explained that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."[4]

We complete a two-step analysis to review a motion for summary judgment based on qualified immunity: "(1) whether an officer's conduct violated a federal right and (2) whether this right was clearly established."[5] A right is clearly established when "controlling authority—or a robust consensus of persuasive authority—[defines] the contours of the right in question with a high degree of particularity."[6]

Summary judgment is warranted "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "A qualified immunity defense alters the usual summary judgment burden of proof."[8] When a defendant raises a qualified immunity defense on summary judgment, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."[9]

## III

Charlot argues that the district court erred in granting the defendants summary judgment on his § 1983 claims. He does not distinguish between the

---

[3] *Shumpert v. City of Tupelo*, 905 F.3d 310, 319–20 (5th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[4] *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks omitted).

[5] *Shumpert*, 905 F.3d at 320. After the Supreme Court's decision in *Pearson v. Callahan*, we may consider these steps in either order. *Pearson*, 555 U.S. at 236.

[6] *Shumpert*, 905 F.3d at 320.

[7] *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017).

[8] *Id.* at 744.

[9] *Id.*; *see Shumpert*, 905 F.3d at 320 (citing *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016)).

No. 17-20797

defendants who were already dismissed from the case and the defendants for whom the district court granted summary judgment. He similarly does not distinguish between claims and factual allegations that he raised in his stricken amended complaint and claims that he raised in his original complaint. We largely will not sift through these issues, however. Even under a generous characterization of Charlot's surviving claims, the district court did not err in granting summary judgment for the defendants.

## A

First, Charlot argues that Medina swore to false information in his affidavit. In *Franks v. Delaware*, the Supreme Court held that an officer is "liable for swearing to false information in an affidavit in support of a search warrant, provided that: (1) the affiant knew the information was false or acted with reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information."[10] This extends to material omissions.[11] Charlot argues that Medina knew that a cavity search was not necessary and that a strip search would be sufficient to reveal any contraband, but misleadingly suggested in his affidavit that a strip search had already been performed. He avers that without this misrepresentation, there would not have been probable cause for the magistrate to issue the warrant, because the magistrate would have required a strip search prior to issuing a warrant for a cavity search.

But Charlot points to no false or misleading representation in Medina's affidavit, let alone any indication that Medina knowingly or recklessly swore to false or misleading information. The affidavit said nothing about a strip search, and pointed to "the circumstances and the behavior of Mr. Charlot"—

---

[10] *Thomas v. Williams*, 719 F. App'x 346, 350 (5th Cir. 2018) (discussing *Franks*, 438 U.S. 154, 171 (1978).

[11] *See Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018).

not any visual identification of contraband—as justifying Medina's belief that a cavity search was necessary. It specifically stated that Smith and the jailor "felt something protruding" from between Charlot's buttocks. This information was not false or misleading, and, contrary to Charlot's arguments on appeal, was consistent with Smith's report and deposition testimony.[12] The district court did not err in granting the defendants summary judgment on this point.[13]

**B**

Second, Charlot argues that the officers knew or had reason to know that the location listed on the warrant—Charlot's anal cavity—was the incorrect location to search for the alleged contraband, and unconstitutionally proceeded with the search regardless. We have held that officers must make reasonable efforts to correctly identify the target of a search; that is, they should attempt to ensure that the search location corresponds to the location described in the warrant.[14] Here, Charlot does not claim that any officer misidentified the location described by the warrant. Instead, he repackages his argument that the cavity search was unjustified, even with a warrant, because the officers should have known that a strip search would be sufficient to locate the object that Smith and the jailor felt. As we will explain, the defendants are entitled to qualified immunity on the underlying issue of whether they were entitled to

---

[12] As the district court correctly observed, Smith's personal views about what type of search was or was not necessary were irrelevant to whether the affidavit established probable cause, as long as the affidavit itself was accurate and non-misleading. Further, the affidavit was wholly consistent with Smith's comment to the hospital that Charlot had possibly secreted narcotics inside his anal cavity at the time of the search.

[13] In any event, even if Charlot demonstrated a genuine dispute over whether Medina offered false information on the affidavit, he has not shown that the other defendants besides Medina—who is not even properly a party on appeal—consequently violated his rights. We have made clear that liability under *Franks* only extends to the officer or officers who signed or presented the affidavit used to obtain the warrant and anyone who intentionally provided information for use in the affidavit. *See Melton v. Phillips*, 875 F.3d 256, 263–64 (5th Cir. 2017) (en banc).

[14] *See Gerhart v. McLendon*, 714 F. App'x 327, 333–34 (5th Cir. 2017) (per curiam) (collecting cases).

rely on the warrant. We therefore conclude that they are entitled to qualified immunity on this point as well.

## C

The crux of Charlot's argument is that even with a warrant, the cavity search was unconstitutional.[15] The Supreme Court has recognized that invasive bodily searches implicate an individual's "most personal and deep-rooted expectations of privacy," and the "Fourth Amendment analysis thus require[s] a discerning inquiry into the facts and circumstances to determine whether the intrusion was justifiable."[16] The fundamental question here is not whether the magistrate should have authorized the search in the first instance, however—it is whether the defendants violated Charlot's clearly established rights in seeking, obtaining, and then executing the warrant.

It is ordinarily "the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment."[17] A warrant issued "by a non-biased magistrate is the 'clearest indication' that officers proceeded 'in an objectively reasonable manner.'"[18] When a plaintiff challenges a search authorized by warrant, our qualified immunity analysis hinges on whether the defendant unreasonably relied on the warrant.[19] An officer is qualifiedly immune from suit over his application for a search warrant "unless, 'on an objective basis, it is obvious that no reasonably competent

---

[15] Charlot appears to argue both that the cavity search was unnecessary and that it used excessive force.

[16] *Winston v. Lee*, 470 U.S. 753, 760 (1985) (discussing *Schmerber v. California*, 384 U.S. 757, 767–68 (1966)).

[17] *Messerschmidt*, 565 U.S. at 547 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 921 (1984)).

[18] *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012) (quoting *Messerschmidt*, 565 U.S. at 546).

[19] *Messerschmidt*, 565 U.S. at 546–47.

officer would have concluded that a warrant should issue.'"[20] Once a warrant issues, an officer can only be held liable for acting on that warrant when "a reasonably well-trained officer would have known that the search or seizure was illegal despite the magistrate's authorization."[21] At all stages, "in the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination"[22]—so, "where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable."[23]

Perhaps in retrospect the magistrate should not have authorized the cavity search,[24] but we agree with the district court that Charlot has failed to demonstrate that the *defendants* acted unreasonably in requesting or complying with the warrant—as he must to overcome the assertion of qualified immunity. Charlot argues that the officers should have known that a cavity search was unnecessary and not the least intrusive option. But the Supreme Court "has repeatedly stated that reasonableness under the Fourth Amendment does not require employing the least intrusive means, because the logic of such elaborate less-restrictive-alternative arguments could raise insuperable barriers to the exercise of virtually all search-and-seizure

---

[20] *See Spencer v. Staton*, 489 F.3d 658, 661 (5th Cir. 2007), *as revised* (July 26, 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *accord Jordan v. Brumfield*, 687 F. App'x 408, 413 (5th Cir. 2017) (per curiam).

[21] *Jordan*, 687 F. App'x at 413 (quoting *Triplett*, 684 F.3d at 504) (alterations omitted).

[22] *Messerschmidt*, 565 U.S. at 547 (quoting *Leon*, 468 U.S. at 921).

[23] *Id.* at 547–48 (quoting *Malley*, 475 U.S. at 346 n.9).

[24] This case presents certain parallels to our decision in *United States v. Gray*, in which we concluded that a warrant-authorized proctoscopic search for hidden drugs was unreasonably executed—although we ultimately held the drugs admissible under the good-faith exception to the exclusionary rule. *Gray*, 669 F.3d 556 (5th Cir. 2012), *vacated and remanded on other grounds by Gray v. United States*, 568 U.S. 802 (2012). Charlot does not argue that this case is controlled by *Gray*, however, and does not present *Gray* or any similar cases in his briefing. Instead, as the defendants observe, he relies principally on cases addressing warrantless cavity searches, including several searches in public view.

No. 17-20797

powers."[25] Charlot has not demonstrated that the search was so clearly unconstitutional that the defendants were prohibited from relying on the warrant.[26] Appearing to concede that the law is not clearly established on this point, he states in his briefing that this would be the first case in the nation "where a cavity search authorized by a warrant was still unconstitutional." We cannot conclude, from the facts and arguments Charlot has presented, that the district court erred in granting qualified immunity to the defendants.

* * *

Charlot has not carried his burden to show a genuine factual dispute over whether the defendants' conduct violated clearly established law. We also conclude that the defendants were entitled to summary judgment on Charlot's bystander and municipal liability claims, which Charlot does not address in his briefing.[27]

**IV**

We affirm the judgment of the district court.

---

[25] *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls*, 536 U.S. 822, 837 (2002); *accord City of Ontario v. Quon*, 560 U.S. 746, 763 (2010). We do not suggest that whether a method of search is the least intrusive will never be relevant. For example, in *Gray*, we observed that the availability of less intrusive means to retrieve hidden drugs weighed against the reasonableness of a proctoscopic examination. *See Gray*, 669 F.3d at 561.

[26] *Cf. Gray*, 669 F.3d at 566 ("[A] warrant . . . that authorizes a medical procedure search of a specific area of the body but does not prescribe any off-limits procedures will be subject to good faith [for suppression purposes] unless the police misled the magistrate, the magistrate abandoned her judicial role, or the warrant so clearly lacked probable cause.").

[27] *See, e.g.*, *United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010) ("Claims not pressed on appeal are deemed abandoned." (quoting *Davis v. Maggio*, 706 F.2d 568, 571 (5th Cir. 1983))); *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (per curiam) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").